# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| LATONYA TYUS, an individual; DAVID HUNSICKER, an individual; LINDA DAVIS, an individual; TERRON SHARP, an individual; COLLINS KWAYISI, an individual; LEE JONES, an individual; RAISSA BURTON, an individual; JERMEY MCKINNEY, an individual; and FLORENCE EDJEOU, an individual, all on behalf of themselves and all similarly situated individuals,<br><br>  Plaintiffs,<br>vs.<br><br>WENDY'S OF LAS VEGAS, INC., an Ohio corporation; CEDAR ENTERPRISES, INC., an Ohio Corporation; and DOES 1 through 100, inclusive,<br><br>  Defendants. | Case No.: 2:14-cv-00729-GMN-VCF<br><br>**ORDER** |

Pending before the Court is the Motion for Partial Judgment on the Pleadings (ECF No. 43) filed by Defendants Wendy's of Las Vegas, Inc. and Cedar Enterprises, Inc. (collectively, "Defendants"). Plaintiffs Raissa Burton, Linda Davis, Florence Edjeou, David Hunsicker, Lee Jones, Kwayisi, Jeremy McKinney, Terron Sharp, and Latonya Tyus (collectively, "Plaintiffs") filed a Response (ECF No. 45), and Defendants filed a Reply (ECF No. 47).

Also pending before the Court is the Motion for Partial Summary Judgment (ECF No. 48) filed by Plaintiff Collins Kwayisi ("Kwayisi"). Defendants filed a Response (ECF No. 53), and Kwayisi filed a Reply (ECF No. 22). For the reasons discussed below, the Court **GRANTS** Defendants' Motion for Partial Judgment on the Pleadings and **DENIES** Kwayisi's Motion for Partial Summary Judgment.

## I. BACKGROUND

This case arises out of alleged violations of Nevada's Minimum Wage Amendment, Nev. Const. art. XV, § 16. Plaintiffs are employees at various locations throughout Clark County, Nevada of the fast food restaurant chain, Wendy's. (Am. Compl. ¶ 1, ECF No. 3). Plaintiffs allege that this action "is a result of [Defendants'] failure to pay Plaintiffs and other similarly-situated employees who are members of the Class the lawful minimum wage, because [Defendants] improperly claim, or have claimed, the right to compensate employees below the upper-tier hourly minimum wage level under Nev. Const. art. XV, § 16." (*Id.* ¶ 2).

Specifically, Plaintiff Kwayisi alleges that he worked at a Wendy's restaurant owned and operated by Defendants and earned an hourly wage below the upper-tier hourly minimum wage under the Minimum Wage Amendment. (*Id.* ¶ 45). Moreover, Defendants offered Kwayisi a health insurance plan through Aetna Inc., but Kwayisi declined the insurance coverage. (*Id.* ¶ 46).

Plaintiffs filed the instant action in this Court on May 9, 2014. (*See* Compl., ECF No. 1). Shortly thereafter, on May 20, 2014, Plaintiffs filed an Amended Complaint. (*See* Am. Compl.). Subsequently, Defendants filed a Motion to Dismiss, seeking dismissal of Plaintiffs' Amended Complaint. (Mot. to Dismiss, ECF No. 11). The Court dismissed Plaintiffs' Second, Third, and Fourth claims for relief with prejudice, and denied Defendant's Motion as to Plaintiffs' First claim for relief. (Feb. 4, 2015 Order, ECF No. 40).

## II. LEGAL STANDARD

**A. Motion for Judgment on the Pleadings**

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "Judgment on the pleadings is properly granted when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled

to judgment as a matter of law." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012). Accordingly, "[a]nalysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Id.*

In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

**B. Motion for Summary Judgment**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went

uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn

in his favor." *Id*. at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. DISCUSSION

**A. Motion for Partial Judgment on the Pleadings**

Plaintiffs' sole surviving claim is for unpaid minimum wages under the Minimum Wage Amendment. (*See* Feb. 4, 2015 Order, ECF No. 40) (dismissing all claims except for violations of the Minimum Wage Amendment). Defendants urge the Court to find that Nevada courts would adopt one or both of the rationales articulated by the California Court of Appeals in *Brewer v. Premier Golf Properties* for finding that punitive damages are unavailable to plaintiffs claiming violations of minimum wage laws. 86 Cal. Rptr. 3d 225 (Cal. Ct. App. 2008).[1] In *Brewer*, the court first held that the California Labor Code's minimum wage requirements are new rights created by statute that did not exist under common law; therefore, under the "new right-exclusive remedy" rule, claims premised on violations of the statutory rights are limited to only those remedies expressly provided under the statute—which did not include punitive damages. *See id.* at 232–34. The court went on to find that notwithstanding the "new right-exclusive remedy" rule, punitive damages would still be unavailable to the plaintiff "because punitive damages are ordinarily limited to actions 'for the breach of an obligation not arising from contract,' and [plaintiff]'s claims for unpaid wages and unprovided meal/rest breaks arise from rights based on her employment contract." *Id.* at 235 (citing Cal. Civ. Code § 3294).

The Court finds that both of the rationales for denying punitive damages in *Brewer* are equally applicable to claims arising under Nevada's Minimum Wage Amendment. Like California, Nevada courts have long subscribed to the rule that "[w]here a statute gives a new

---

[1] "Where Nevada law is lacking, its courts have looked to the law of other jurisdictions, particularly California, for guidance." *Eichacker v. Paul Revere Life Ins. Co.*, 354 F.3d 1142, 1145 (9th Cir. 2004).

right and prescribes a particular remedy, such remedy must be strictly pursued, and is exclusive of any other." *State v. Yellow Jacket Silver Min. Co.*, 14 Nev. 220, 225 (1879); *see also Builders Ass'n of N. Nevada v. City of Reno*, 776 P.2d 1234, 1235 (Nev. 1989) ("If a statute expressly provides a remedy, courts should be cautious in reading other remedies into the statute."). The right to receive a minimum wage arises from legislative mandate and did not exist under common law. *See Brewer*, 86 Cal. Rptr. 3d at 232 ("Labor Code statutes regulating pay stubs (§ 226) and minimum wages (§ 1197.1) create new rights and obligations not previously existing in the common law."); *cf. MGM Grand Hotel-Reno, Inc. v. Insley*, 728 P.2d 821, 824 (Nev. 1986) (noting that the "obligation to pay compensation benefits and the right to receive them exists as a matter of statute independent of any right established by contract," and that such liability is "created" by statute). Accordingly, the remedies available for violating minimum wage laws are limited to those expressly provided by statute and constitutional amendment.

The Minimum Wage Amendment states: "An employee claiming violation of this section . . . shall be entitled to all remedies available under the law or in equity appropriate to remedy any violation of this section, including but not limited to back pay, damages, reinstatement or injunctive relief." Nev. Const. art. XV, § 16(B).[2] However, there is no provision for punitive damages or any other type of damages aimed at punishing an employer for noncompliance. *See Siggelkow v. Phoenix Ins. Co.*, 846 P.2d 303, 304–05 (Nev. 1993) ("Punitive damages are not awarded as a matter of right to an injured litigant, but are awarded in addition to compensatory damages as a means of punishing the tortfeasor and deterring the tortfeasor and others from engaging in similar conduct."). Instead, the Minimum Wage

---

[2] In addition to the compensatory damages, the Minimum Wage Amendment also provides: "An employee who prevails in any action to enforce this section shall be awarded his or her reasonable attorney's fees and costs." Nev. Const. art. XV, § 16(B).

Amendment's language explicitly provides only for damages "appropriate to remedy any violation." Nev. Const. art. XV, § 16(B).  Therefore, because damages for violations of the Minimum Wage Amendment are limited to those expressly provided by the amendment and there is no provision in the amendment for punitive damages, Plaintiffs cannot recover punitive damages for their claims.[3]

Additionally, even if the "new right-exclusive remedy" rule did not apply, punitive damages would still be unavailable for Plaintiffs' claims.  Nevada law permits the awarding of punitive damages for tort claims where the defendant "has been guilty of oppression, fraud or malice," *see* Nev. Rev. Stat. § 42.005, or where such damages are explicitly provided by statute. *See, e.g.*, Nev. Rev. Stat. § 42.010 ("In an action for the breach of an obligation, where the defendant caused an injury by the operation of a motor vehicle . . . after willfully consuming or using alcohol or another substance, knowing that the defendant would thereafter operate the motor vehicle, the plaintiff, in addition to the compensatory damages, may recover damages for the sake of example and by way of punishing the defendant.").  However, "the award of punitive damages cannot be based upon a cause of action sounding solely in contract." *Ins. Co. of the W. v. Gibson Tile Co.*, 134 P.3d 698, 703 (Nev. 2006); *see also* Nev. Rev. Stat. § 42.005 ("[I]n an action for the breach of an obligation *not arising from contract*, . . . the plaintiff . . . may recover damages for the sake of example and by way of punishing the defendant.") (emphasis added).

Though Plaintiffs' minimum wage claims arise from Defendants' alleged failure to pay a

---

[3] The Court notes, however, that under the old statutory minimum wage scheme, "the Labor Commissioner may impose against [an employer] an administrative penalty of not more than $5,000 for each violation." Nev. Rev. Stat. § 608.290.2.  Accordingly, because there is no provision of the Minimum Wage Amendment addressing the application of penalties or fines for violations, the Labor Commissioner may impose an administrative penalty of up to $5,000 for violators of the Minimum Wage Amendment.  The ability of the Labor Commissioner to impose such a penalty alleviates Plaintiffs' concern that punitive damages are necessary for minimum wage claims in order to discourage employers from willfully violating the Minimum Wage Amendment. (*See* Resp. to Mot. for Judgment n.2, ECF No. 45).

statutory obligation, "when a statute imposes additional obligations on an underlying contractual relationship, a breach of the statutory obligation is a breach of contract that will not support tort damages beyond those contained in the statute." *See Brewer*, 86 Cal. Rptr. 3d at 235; *see also Camino Properties, LLC v. Ins. Co. of the W.*, No. 2:13-CV-02262-APG, 2015 WL 2225945, at *3 (D. Nev. May 12, 2015) ("ICW cannot be right that liabilities arising from a contract, where the contract is required by statute, is a 'liability by statute.' . . . Even though insurance contracts exist because a statute requires drivers to buy them, claims for breaches of the insurance policy are governed by the six-year limitations period for contracts."); *cf. Descutner v. Newmont USA Ltd.*, No. 3:12-CV-00371-RCJ, 2012 WL 5387703, at *2 (D. Nev. Nov. 1, 2012) (stating that the Nevada statute concerning overtime wages, section 608.140, "does not imply a private right of action to sue under the labor code, but only to sue in contract"). Therefore, because claims for violations of the Minimum Wage Amendment arise from an underlying contractual employer-employee relationship, such claims do not entitle a plaintiff to punitive damages. Accordingly, Plaintiffs cannot seek punitive damages based solely on a claim for violations of the Minimum Wage Amendment, and their claims for punitive damages are dismissed.

**B. Kwayisi's Motion of Partial Summary Judgment (ECF No. 48)**

Kwayisi asserts that he "is entitled to partial summary judgment on his first claim for relief, because Defendants could *only* pay the lower-tier wage if they *actually provided* (or supplied or furnished) a qualifying health plan, which they did not, but must have paid the upper-tier wage to him if they *did not actually provide* (or supply or furnish) such benefits, for any reason." (Mot. Partial Summ. J. 6:12–15, ECF No. 48). Moreover, Kwayisi argues that "Defendants will claim that all they had to do was 'offer' health insurance benefits to gain the privilege of underpaying its minimum wage employees," however, "[s]uch conduct is not, in any way, authorized by the Minimum Wage Amendment." (*Id.* 6:15–18).

The Minimum Wage Amendment provides in pertinent part as follows:

> Each employer shall pay a wage to each employee of not less than the hourly rates set forth in this section. The rate shall be five dollars and fifteen cents ($5.15) per hour worked, if the employer provides health benefits as described herein, or six dollars and fifteen cents ($6.15) per hour if the employer does not provide such benefits. Offering health benefits within the meaning of this section shall consist of making health insurance available to the employee for the employee and the employee's dependents at a total cost to the employee for premiums of not more than 10 percent of the employee's gross taxable income from the employer.

Nev. Const. art. XV, § 16. Because Plaintiffs' claims depend on whether Defendants' offer of health benefits was sufficient to pay the lower-tier wage, a dispositive question exists as to the interpretation of "provide" in the context of the Minimum Wage Amendment. The parties agree that the sole dispositive issue before the Court is the interpretation of "provide" in the context of the Minimum Wage Amendment. (*See* Response 4:19–20, ECF No. 53; Reply 2:7–8, ECF No. 55). Kwayisi argues that "provide" within the context of the Minimum Wage Amendment means to actually provide or furnish qualifying health benefits to employees. (Reply 2:13–14). However, Defendants contend that "provide" means to offer or make qualifying health benefits available to employees. (Response 3:5–6).

Pursuant to Rule 5 of the Nevada Rules of Appellate Procedure ("Rule 5"), a United States District Court may certify a question of law to the Nevada Supreme Court "upon the court's own motion." Nev. R. App. P. 5(a)-(b). Under Rule 5, the Nevada Supreme Court has the power to answer such a question that "may be determinative of the cause then pending in the certifying court and . . . it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of this state." Nev. R. App. P. 5(a). In this case, the Court is sitting in diversity jurisdiction; thus Nevada substantive law controls. Moreover, the parties fail to cite and the Court has not found any controlling decisions from the Nevada Supreme

Court that interprets "provide" in the context of the Minimum Wage Amendment. Accordingly, under Rule 5, answering this certified question is within the power of the Nevada Supreme Court.

Rule 5 also provides that a certification order must specifically address each of six requirements:

> (1) The questions of law to be answered;
> (2) A statement of all facts relevant to the questions certified;
> (3) The nature of the controversy in which the questions arose;
> (4) A designation of the party or parties who will be the appellant(s) and the party or parties who will be the respondent(s) in the Supreme Court;
> (5) The names and addresses of counsel for the appellant and respondent; and
> (6) Any other matters that the certifying court deems relevant to a determination of the questions certified.

Nev. R. App. P. 5(c). The relevant facts are set forth in Section I, above. Thus, the Court addresses only the remaining five requirements below.

### 1. Nature of the Controversy

The parties disagree as to whether "provide" in the context of the Minimum Wage Amendment means that an employer's offer of health benefits is sufficient to pay the lower wage rate under the Minimum Wage Amendment. In support of his argument, Plaintiff has brought to the Court's attention two recent state district court decisions in support of his position. *See Diaz v. MDC Restaurants, LLC*, A-14-701633-C, Eighth Judicial Dist., Dept. XVI (July 17, 2015); *Hancock v. The State of Nevada*, 14 OC 00080 1B, First Judicial Dist., Dept. II (Aug. 14, 2015). On the other hand, Defendants cite various regulations enacted by the Labor Commissioner to support their position, which clarify and implement the Minimum Wage Amendment. *See* NAC § 608.102 ("To qualify to pay an employee the [lower-tier] minimum wage…[t]he employer *must offer* a health insurance plan…[and] [t]he health insurance plan *must be made available* to the employee and any dependents of the employee.") (emphasis added); *see also* NAC §§ 608.100, 106–08.

  **2.**  **Question of Law**

Accordingly, the Court certifies the following question of law:

> *Whether an employee must actually enroll in health benefits offered by an employer before the employer may pay that employee at the lower-tier wage under the Minimum Wage Amendment, Nev. Const. art. XV, § 16.*

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion for Partial Judgment on the Pleadings (ECF No. 43) is **GRANTED**. Plaintiffs' punitive damages requests are dismissed with prejudice.

**IT IS FURTHER ORDERED** that Plaintiff Collins Kwayisi's Motion for Partial Summary Judgment (ECF No. 48) is **DENIED without prejudice**, with permission to renew the motion within thirty (30) days of the resolution of the Court's Certified Question to the Nevada Supreme Court.

**IT IS FURTHER ORDERED** that the following question of law is **CERTIFIED to the Nevada Supreme Court** pursuant to Rule 5 of the Nevada Rules of Appellate Procedure:

> *Whether an employee must actually enroll in health benefits offered by an employer before the employer may pay that employee at the lower-tier wage under the Minimum Wage Amendment, Nev. Const. art. XV, § 16.*

*See* Nev. R. App. P. 5(c)(1). The nature of the controversy and a statement of facts are discussed above. *See* Nev. R. App. P. 5(c)(2)–(3). Because Plaintiff Kwayisi is the movant, Kwayisi is designated as the Appellant, and Defendants are designated as the Respondents. *See* Nev. R. App. P. 5(c)(4). The names and addresses of counsel are as follows:

  **Counsel for Plaintiff**

  Bradley Scott Schrager, Daniel Bravo, and Don Springmeyer
  Wold, Rifkin, Shapiro, Schulman & Rabkin, LLP
  3556 E. Russell Road, 2nd Floor
  Las Vegas, NV 89120

**Counsel for Defendants**

Kathryn Blakey, Rick D. Roskelley, and Roger L. Grandgenett
Littler Mendelson, PC
3960 Howard Hughes Parkway, Suite 300
Las Vegas, NV 89169

Montgomery Y. Paek
Jackson Lewis P.C.
3800 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

*See* Nev. R. App. P. 5(c)(5).  Further elaboration upon the certified question is included in this Order.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall forward a copy of this Order to the Clerk of the Nevada Supreme Court under the official seal of the United States District Court for the District of Nevada. *See* Nev. R. App. P. 5(d).

**IT IS FURTHER ORDERED** that all other pending motions are **DENIED without prejudice**, with permission to re-file upon resolution of the Court's Certified Question to the Nevada Supreme Court.

**DATED** this 21st day of August, 2015.

_____
Gloria M. Navarro, Chief Judge
United States District Judge