# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

LATONYA TYUS, an individual; DAVID )
HUNSICKER, an individual; LINDA )
DAVIS, an individual; TERRON SHARP, )     Case No.: 2:14-cv-0729-GMN-VCF
an individual; COLLINS KWAYISI, an )
individual; LEE JONES, an individual; )          **ORDER**
RAISSA BURTON, an individual; )
JERMEY MCKINNEY, an individual; and )
FLORENCE EDJEOU, an individual, all on )
behalf of themselves and all similarly situated )
individuals, )
)
                    Plaintiffs, )
        vs. )
)
WENDY'S OF LAS VEGAS, INC., an )
Ohio corporation; CEDAR ENTERPRISES, )
INC., an Ohio Corporation; and DOES 1 )
through 100, inclusive, )
)
                    Defendants. )
)

Pending before the Court is the Motion for Summary Judgment, (ECF No. 77), filed by

Defendants Cedar Enterprises, Inc., and Wendy's of Las Vegas, Inc. (collectively

"Defendants"). Plaintiffs Raissa Burton, Linda Davis, Florence Edjeou, David Hunsicker, Lee

Jones, Collins Kwayisi ("Kwayisi"), Jeremy McKinney, Terron Sharp, and Latonya Tyus

(collectively "Plaintiffs") filed a Response, (ECF No. 84), and Defendants filed a Reply, (ECF

No. 87). For the reasons discussed below, the Court **GRANTS** Defendants' Motion for

Summary Judgment.[1]

---

[1] Also pending before the Court is the Motion to Certify Class, (ECF No. 76), filed by Plaintiffs. Defendants
filed a Response, (ECF No. 85), and Plaintiffs filed a Reply, (ECF No. 86). Because the Court is granting
Defendants' Motion for Summary Judgment, the Court **DENIES** Plaintiffs' Motion to Certify Class as moot.

# I.    BACKGROUND

This case arises out of alleged violations of Nevada's Minimum Wage Amendment, Nev. Const. art. XV, § 16 (the "MWA").  Plaintiffs are employees at various locations throughout Clark County, Nevada, of the fast food restaurant chain, Wendy's. (Am. Compl. ¶ 1, ECF No. 3).  Plaintiffs allege that this action "is a result of [Defendants'] failure to pay Plaintiffs and other similarly-situated employees who are members of the Class the lawful minimum wage, [sic] because [Defendants] improperly claim, or have claimed, the right to compensate employees below the upper-tier hourly minimum wage level under [the MWA]." (*Id.* ¶ 2).

For example, Kwayisi alleges that he worked at a Wendy's restaurant owned and operated by Defendants and earned an hourly wage below the upper-tier hourly minimum wage under the MWA. (*Id.* ¶ 45).  Moreover, Defendants offered Kwayisi a health insurance plan through Aetna Inc., but Kwayisi declined the insurance coverage. (*Id.* ¶ 46).  As a result, Plaintiffs allege that Defendants "do not provide, offer," or "maintain qualifying health insurance plan benefits for the benefit of Plaintiffs and members of the Class, and therefore Defendants are not, and have not been, eligible to pay Plaintiffs and members of the Class below the upper-tier hourly minimum wage level." (*Id.* ¶ 11).

Plaintiffs filed the instant action on May 9, 2014. (*See* Compl., ECF No. 1).  Shortly thereafter, on May 20, 2014, Plaintiffs filed an Amended Complaint. (*See* Am. Compl.).  Subsequently, Defendants filed a Motion to Dismiss, seeking dismissal of Plaintiffs' Amended Complaint. (Mot. to Dismiss, ECF No. 11).  The Court dismissed Plaintiffs' second, third, and fourth claims for relief with prejudice, and denied Defendants' Motion as to Plaintiffs' first claim for relief. (Feb. 4, 2015 Order, ECF No. 40).

On August 21, 2015, in response to Kwayisi's Motion for Partial Summary Judgment, (ECF No. 48), the Court certified the following question to the Nevada Supreme Court:

"Whether an employee must actually enroll in health benefits offered by an employer before the employer may pay that employee at the lower-tier wage under the [MWA]." (Order on Mot. for Summ. J. 11:3–5, ECF No. 71). The Nevada Supreme Court answered the question in *MDC Restaurants, LLC v. Eighth Judicial District Court*, 383 P.3d 262 (Nev. 2016), by holding that "under the MWA, health benefits need only be offered or made available for the employer to pay the lower-tier wage." 383 P.3d at 266.

Subsequently, the parties filed a Joint Motion to Certify an additional question to the Nevada Supreme Court. (ECF No. 78). The parties specifically sought to certify the following question: "What constitutes 'health benefits' offered by an employer for purposes of paying below the upper-tier minimum hourly wage rate under [the MWA]?" (Joint Mot. to Certify 3:26–27). The Court denied the parties' Motion finding that the Nevada Supreme Court had answered the proposed question in *Western Cab Company v. Eighth Judicial District Court*, 390 P.3d 662 (Nev. 2017). *See* 390 P.3d at 671 ("The MWA defines 'health benefits' as 'making health insurance available to the employee for the employee and the employee's dependents at a total cost to the employee for premiums of not more than 10 percent of the employee's gross taxable income from the employer.'").

In the instant Motion, Defendants seek summary judgment on Plaintiffs' remaining first cause of action because, pursuant to the Nevada Supreme Court's decisions, "Plaintiffs were offered qualifying health insurance plans and were paid at least $7.25 per hour." (*See* Mot. for Summ. J. ("MSJ") 2:18–19, ECF No 77).

## II.    LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that

may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute,

1  the opposing party need not establish a material issue of fact conclusively in its favor.  It is

2  sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the

3  parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*

4  *Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid

5  summary judgment by relying solely on conclusory allegations that are unsupported by factual

6  data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go

7  beyond the assertions and allegations of the pleadings and set forth specific facts by producing

8  competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

9       At summary judgment, a court's function is not to weigh the evidence and determine the

10 truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.

11 The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn

12 in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is

13 not significantly probative, summary judgment may be granted. *See id.* at 249–50.

14 **III.    DISCUSSION**

15      Defendants seek summary judgment on Plaintiffs sole surviving claim for unpaid

16 minimum wages under the MWA because "the health insurance [offered to Plaintiffs] is and

17 was proper health insurance under the MWA and supporting regulations." (MSJ 2:8–9).

18 Specifically, Defendants state that under the MWA and supporting regulation, four

19 requirements must be met for the health insurance to be adequate: (1) the health insurance must

20 cover those categories of health care expenses that are generally deductible by an employee on

21 his individual federal income tax return pursuant to 26 U.S.C. § 213 if such expenses had been

22 borne directly by the employee; (2) the health insurance must be made available to the

23 employee and any dependents of the employee; (3) the health insurance must not have a

24 waiting period that exceeds more than six months; and (4) the health insurance must cost the

25 employee no more than ten percent of the employee's gross taxable income attributable to the

employer. (*Id.* 2:10–16); *see* Nev. Const. art. XV § 16; Nev. Admin. Code ("NAC") 608.102. Defendants claim that the "health insurance plans offered to Plaintiffs satisfy all four." (MSJ 2:17).

Plaintiffs respond that NAC 608.102 "is an unworkable standard" because "this Court would end up interpreting not the Nevada Constitution itself, but rather the [NAC] 608.10[2] language instead." (Resp. 12:15–17). In lieu, Plaintiffs recommend the Court follow "the provisions of [NRS] Chapters 608, 698A and 698B." (*Id.* 13:2). Plaintiffs continue, however, that regardless of the rationale the Court chooses to use, the plans "are not qualified health insurance under the [MWA] in any case." (*Id.* 2:18–19). The Court will first address Plaintiffs' arguments against using NAC 608.102 as the standard for the MWA.

The MWA guarantees to each Nevada employee a base wage. *See* Nev. Const. art. 15, § 16(A). Effective in 2006, the lower-tier wage was originally $5.15 per hour if the employer provided health benefits, and the upper-tier wage was $6.15 if the employer did not provide health benefits. *Id.* When the instant action was filed, the lower-tier wage was $7.25, and the upper-tier wage was $8.25. (2012–2015 Nevada Lab. Commissioner Bulls. Announcing Minimum Wage, Ex. 3 to MSJ, ECF No. 77-4).

After the MWA was implemented, differing interpretations arose as to what "provides" required, with some asserting that to pay the lower rate, the employer must actually enroll employees in a benefits plan, and others arguing that the employer must merely offer benefits to employees. (*See, e.g.*, Kwayisi's MSJ, ECF No. 48). In 2007, the Office of the Labor Commissioner adopted administrative code regulations addressing this question and provided that "[t]o qualify to pay an employee the [lower-tier] minimum wage . . . [t]he employer must offer a health insurance plan." NAC 608.102(1). Further, NAC 608.102(2) clarified that "[t]he health insurance plan must be made available to the employee and any dependents of the employee."

Although Plaintiffs argue that NAC 608.102 is "unworkable," it is the standard by which the Nevada Supreme Court interprets the MWA. *See, e.g.*, *MDC Restaurants, LLC v. Eighth Judicial Dist. Court*, 383 P.3d 262, 268 (Nev. 2016) ("In this case, with regard to whether employers must 'offer' or 'enroll' employees in health benefit plans to pay the lower-tier wage, our holding is consistent with the Labor Commissioner's promulgations, *see* NAC 608.102 (2007) (providing that an employer must 'offer' health benefits), and the language of the MWA is plain: employers need only offer health benefits to pay the lower-tier wage. Thus, we announce no new principle of law as to this issue, and its resolution could clearly have been foreshadowed."); *W. Cab Co. v. Eighth Judicial Dist. Court of State in & for Cty. of Clark*, 390 P.3d 662, 670–71 (Nev. 2017) (defining and interpreting the term "health benefits" pursuant to NAC 608.102(1)). As such, the Court will consider the MWA in concert with NAC 608.102.

According to NAC 608.102, to qualify to pay an employee the minimum wage, an employer must meet each of the following requirements: (1) the employer must offer a health insurance plan that covers those categories of health care expenses that are generally deductible by an employee on his individual federal income tax return pursuant to 26 U.S.C. § 213 and any federal regulations relating thereto; (2) the health insurance plan must be made available to the employee and any dependents of the employee; (3) the waiting period for the health insurance plan is not more than six months; and (4) the share of the cost of the premium for the health insurance plan paid by the employee must not exceed ten percent of the gross taxable income of the employee attributable to the employer under the Internal Revenue Code. NAC 608.102. The Court will address the four factors in turn.

### 1. The Health Insurance Must Cover Those Categories of Health Care Expenses that are Generally Deductible.

Defendants argue that 26 U.S.C. § 213 governs this factor as it "sets forth two categories of health care that are generally deductible: (1) medical care; and (2) medicine or drugs that are

a prescribed drug or insulin." 26 U.S.C. § 213 (a)–(b); (MSJ 9:13–10:8).  Moreover,

Defendants assert that Treasury Regulation § 1.213(e) clarifies § 213 by setting forth specific

examples of appropriate lodging expenses and medical care such as, *inter alia*, hospital

services, nursing services, medical, laboratory, surgical, and dental. 26 CFR 1.213-1(e); (MSJ

10:9–26).  Defendants contend that if a health insurance plan covers these things, "then it

covers categories of health care expenses that are generally deductible by an employee on his

individual federal income tax return," thereby meeting this first factor. (MSJ 10:28–11:2).

    In response, Plaintiffs state that § 213 does not describe any categories at all, but "it

establishes the tax deduction for expenses paid for medical care generally." (Resp. 18:1–4).

Plaintiffs continue that "[t]here are, in fact, dozens of categories of health care expenses that are

deductible" and state that "Defendants' [p]lans do not provide coverage for the range of

categories of health care expenses that individuals could deduct on their federal tax returns."

(*Id.* 18:8–16).  Further, Plaintiffs argue that "Defendants do not get to select which of these

categories their [p]lans can 'cover,' and which they need not" because Plaintiffs assert that

NAC 608.102 requires "*those* categories of health care expenses." (*Id.* 18:16–19).  Based on

these assertions, Plaintiffs seemingly argue that "those" implies "all."

    When interpreting a statute, legislative intent "is the controlling factor." *Robert E. v.*

*Justice Court*, 664 P.2d 957, 959 (Nev. 1983).  The starting point for determining legislative

intent is the statute's plain meaning; when a statute "is clear on its face, a court can not go

beyond the statute in determining legislative intent." *Id.*; *see also State v. Catanio*, 102 P.3d

588, 590 (2004) ("We must attribute the plain meaning to a statute that is not ambiguous.");

*Arguello v. Sunset Station, Inc.*, 252 P.3d 206, 209 (Nev. 2011).

    The text of NAC 608.102(1)(a) states that an employer must offer a health insurance

plan that "[c]overs *those* categories of health care expenses that are generally deductible by an

employee on his individual federal income tax return pursuant to 26 U.S.C. § 213 and any

federal regulations relating thereto, if such expenses had been borne directly by the employee." NAC 608.102(1)(a) (emphasis added).

In this section, "those" does not imply "all," but instead narrows what qualifies as health care expenses; "those" defines the specific categories that are generally deductible on a person's federal income tax pursuant to § 213, and therefore *can* be covered by employers' health plans. The word "those" does not indicate that every service or health care expense that is deductible must be included, but rather, that what is included has to be deductible. As such, the Court holds that in regards to the word "those," the statute is clear on its face and Plaintiffs' alleged interpretation of the word is not reasonable to render the plain meaning ambiguous. Therefore, in order for the health insurance to be adequate under NAC 608.102, the categories of health care expenses included must be generally deductible pursuant to § 213, but the categories need not include every type of health expense generally deductible under § 213.

Here, Plaintiffs were offered the 2012, 2013, 2014, and 2015 health insurance plans (the "plans"). (Tyus Dep. 17:20–23; 61:15–62:24; and 74:5–75:9, Ex. 4 to MSJ, ECF No. 77-5); (Hunsicker Dep. 37:17–38:23; 49:22–50:23; 84:17–85:20; 92:16–93:3; and 154:5–155:5, Ex. 8 to MSJ, ECF No. 77-9); (Davis Ins. Acknowledgement Sheet, Ex. 10, ECF No. 77-11); (Kwayisi Dep., 61:20–63:15; 90:3–91:1; 92:17–95:13; 101:15–102:17; 120:1–23; and 162:2– 163:15, Ex. 12 to MSJ, ECF No. 77-13); (Harmon Dep. 13:22–14:10; 174:18–175:24, Ex. 6 to MSJ, ECF No. 77-7); (Burton Dep. 56:25–57:24; 97:7–25; 104:7–13; and 156:1-157:10, Ex. 16 to MSJ, ECF No. 77-17); (McKinney Dep. 43:22–45:3; 45:23–47:16; 49:2–19; and 59:14–24, Ex. 19 to MSJ, ECF No. 77-20); (Edjeou Dep. 39:23–40:23; 47:5–49:2; and 56:18–57:17, Ex. 22 to MSJ, ECF No. 77-23). In each of these plans, the expenses that were covered fell under "medical care" pursuant to § 213, such as preventative care expenses, child health supervision,

family planning services, and physician visits.[2] *See* 26 U.S.C. § 213; 26 CFR 1.213-1. Because Defendants' plans include "those categories of health care expenses that are generally deductible by an employee on his individual federal income tax return pursuant to 26 U.S.C. § 213," Defendants' plans meet NAC 608.102(1)(a). *See* NAC 608.102(1)(a). Accordingly, Defendants' plans are sufficient under the first factor.

### 2. The Health Insurance Must Be Made Available to the Employee and Any Dependents.

The text of NAC 608.102(2) states that "[t]he health insurance plan must be made available to the employee and any dependents of the employee." NAC 608.102(2). Defendants state that "[a]s evidenced by the enrollment kits, questions and answer sheets, and plan documents, all health insurance plans made available to . . . hourly employees earning below $8.25 per hour during the 2012 to 2015 time period[ ] provided coverage to those employees' dependents." (MSJ 12:19–21). Indeed, the health insurance plans offered coverage to dependents. (*See* Aetna Affordable Health Choices Benefits Plan (2012) at 3, Ex. 25 to MSJ ("Your dependents can be covered under your plan")); (Aetna Affordable Health Choices Benefits Plan (2013) at 3, Ex. 26 to MSJ ("Your dependents can be covered under your plan")); and (Aetna Fixed Benefits Plan (2014) at 2, Ex. 27 to MSJ ("If you are an eligible employee, you can also enroll your eligible dependents")). Moreover, Plaintiffs do not dispute that Defendants' plans meet this factor. As such, Defendants' plans meet the second requirement of NAC 608.102.

---

[2] For an inclusive list of what was covered, *see* (Aetna Affordable Health Choices Benefits Plan (2012) at 12–37, Ex. 25 to MSJ, ECF No. 77-26); (Aetna Affordable Health Choices Benefits Plan (2013) at 13–37, Ex. 26 to MSJ, ECF No. 77-27); and (Aetna Fixed Benefits Plan (2014) at 3–6, Ex. 27 to MSJ, ECF No. 77-28). Moreover, the 2015 Enrollment Plan renewed the 2014 Plan making the 2014 Plan applicable as reference for the 2015 Plan. (*See* MSJ 6:20–22).

### 3. The Waiting Period for the Health Insurance Plan is Not More Than Six Months.

NAC 608.102(2)(b) requires that "[t]he waiting period for the health insurance plan is not more than 6 months." There were no waiting periods under all the plans offered to Plaintiffs as the coverage eligibility date was either the effective date of the plan, the date the person was hired, or the first day of the pay period that followed the pay period in which a deduction occurred. (*See* Aetna Affordable Health Choices Benefits Plan (2012) at 3, Ex. 25 to MSJ); (Aetna Affordable Health Choices Benefits Plan (2013) at 3, Ex. 26 to MSJ); and (2014 Aetna Enrollment Kit, Ex. 27 to MSJ). Plaintiffs do not dispute this factor, and based on the evidence, the Court finds it is met.

### 4. The Share of the Cost of the Premium for the Health Insurance Plan Paid by the Employee Must Not Exceed Ten Percent of the Gross Taxable Income of the Employee.

The MWA provides the following: "Offering health benefits . . . shall consist of making health insurance available to the employee for the employee and the employee's dependents at a total cost to the employee for premiums of not more than 10 percent of the employee's gross taxable income from the employer." Moreover, under the plain language of this constitutional provision, the MWA's ten-percent cost cap pertains to compensation and wages paid by the employer to the employee. *See MDC Restaurants, LLC*, 383 P.3d at 267.

Here, Defendants instituted a policy where they deducted "either the premium cost of insurance or 10% of the employee's income, whichever is less, from its employees' pay checks to cover their health insurance premiums." (MSJ 14:7–9); (*see* Holliday Decl., Exs. 31 and 33 to MSJ, ECF Nos. 77-32, 77-34); (Davis Deposit Detail, Ex. 11 to MSJ, ECF No. 77-12). Defendants state that "due to this policy, the health insurance plans cannot cost any employee more than 10% of the employee's gross taxable income." (MSJ 14:19–20). Plaintiffs do not address this factor, and pursuant to Defendants' evidence, the Court finds that this factor is met.

Accordingly, because Defendants' plans meet all four of the factors provided in the MWA and NAC 608.102 for defining what constitutes health insurance, the Court grants summary judgment in Defendants' favor.

**IV.    CONCLUSION**

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment, (ECF No. 77), is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Certify Class, (ECF No. 76), is **DENIED as moot**.

The Clerk of the Court shall enter judgment accordingly and close the case.

**DATED** this __28__ day of September, 2017.

_____

Gloria M. Navarro, Chief Judge
United States District Judge