# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

LATONYA TYUS, an individual, on behalf of
herself and all similarly situated individuals, *et
al.*,

                Plaintiffs,

    vs.

WENDY'S OF LAS VEGAS, INC.; CEDAR
ENTERPRISES, INC.

                Defendants.

Case No.: 2:14-cv-00729-GMN-VCF

**ORDER**

Pending before the Court is the Second Renewed Motion for Summary Judgment, (ECF No. 110), filed by Defendants Wendy's of Las Vegas, Inc. and Cedar Enterprises, Inc. (collectively "Defendants"). Plaintiffs Latonya Tyus, Raissa Burton, Florence Edjeou, David Hunsicker, Lee Jones, Collins Kwayisi, Jeremy McKinney, Terron Sharp, and Linda Davis (collectively "Plaintiffs") filed a Response, (ECF No. 119), and Defendants filed a Reply, (ECF No. 122). Also pending before the Court is Plaintiffs' Renewed Motion to Certify Class, (ECF No. 108), to which Defendants filed a Response, (ECF No. 117), and Plaintiffs filed a Reply, (ECF No. 118).

For the reasons discussed herein, Defendants' Motion for Summary Judgment is **DENIED** and Plaintiffs' Motion to Certify Class is **GRANTED.**

## I.    <u>BACKGROUND</u>

This case arises out of Defendants' alleged violations of Nevada's Minimum Wage Amendment, Nev. Const. art. XV, § 16 (the "MWA"). During all relevant times, Defendants owned and operated approximately thirty Wendy's Restaurants (collectively "Restaurants") in Nevada; and Plaintiffs are either current or former employees of Defendants' Restaurants.

(Mot. to Certify 4:22–5:12, ECF No. 108). Plaintiffs bring this action in their individual capacities and on behalf of other similarly situated employees of the Restaurants whom Defendants allegedly failed to offer MWA-compliant health benefits plans. (*Id.*); (Am. Compl. ¶¶ 2–23, 79–105, ECF No. 3).

On September 2017, the Court granted summary judgment in favor of Defendants for Plaintiffs' wage-violation claim, reasoning that Defendants' health plan was consistent with the MWA and its corresponding regulations. (*See* Order 12:1–3, ECF No. 92). The Court based its conclusion on two decisions in which the Nevada Supreme Court stated the MWA is governed by the standards set forth in Nevada Administrative Code ("NAC") 608.102. (*Id.* 7:1–11) (citing *MDC Rests., LLC v. Eighth Judicial Dist. Court*, 383 P.3d 262, 268 (Nev. 2016) ("*MDC I*"); *W. Cab Co. v. Eighth Judicial Dist. Court*, 390 P.3d 662, 670 (Nev. 2017) ("*Western Cab*")). Applying NAC 608.102, this Court found that Defendants' health-benefits plan met the four-factor test for defining health insurance. (*Id.* 7:22–12:3). Consequently, the Court denied as moot Plaintiff's motion to certify class and instructed the clerk of court to enter judgment in favor of Defendant. (*Id.* 12:4–9); (*see also* Clerk's J., ECF No. 93).

Plaintiff appealed the Court's decision, (ECF No. 94), and during the appeal's pendency, the Nevada Supreme Court issued its decision in *MDC Rests., LLC v. Eighth Jud. Dist. Court*, 419 P.3d 148 (Nev. 2018) ("*MDC II*"). In *MDC II*, the Supreme Court addressed "whether there is some minimum quality or substance of health insurance that an employer must provide for the employer to pay the lower-tier minimum wage under the MWA." *See MDC II*, 419 P.3d at 154. To answer this question, the *MDC II* Court looked to the "text, history, and purpose of the MWA," and stated that "NAC 608.102 is an unworkable standard for making such a determination." *Id.* Declining to stray from the "simple meaning found within the text and purpose of the MWA," the Nevada Supreme Court held:

> [A]n employer is qualified to pay the lower-tier minimum wage to
> an employee if the employer offers a benefit to the employee in the

> form of health insurance of a value greater than or equal to the wage of an additional dollar per hour, and covers "the employee and the employee's dependents at a total cost to the employee for premiums of not more than 10 percent of the employee's gross taxable income from the employer." Nev. Const. art. 15, § 16. An employer who pays the lower-tier minimum wage will have the burden of showing that it provided the employee with a benefit in the form of health insurance equal to a value of at least an additional dollar per hour in wages. If an employer cannot offer such insurance to an employee, the employer must pay the employee the upper-tier minimum wage.

*Id.* at 155–56. In light of this holding, the Ninth Circuit Court of Appeals remanded this case for consideration. (Mem. Op., ECF No. 102). Shortly thereafter, Plaintiffs filed the instant renewed Motion to Certify, and Defendants filed its second renewed Motion for Summary Judgment.

The Court begins with Defendants' Motion for Summary Judgment, followed by Plaintiff's Motion to Certify.

## II.  MOTION FOR SUMMARY JUDGMENT

### A.  Legal Standard

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A

principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go

beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249–50.

### B. Discussion

Defendants' Motion for Summary Judgment presents a purely legal issue: whether the *MDC II* decision applies retroactively. (Defs.' MSJ 3:23–4:2, ECF No. 110). Defendants argue that, because *MDC II* overruled *Western Cab*—a decision which Defendants claim they modeled their health benefits practices after—the Nevada Supreme Court would hold that equitable considerations dictate *MDC II* applies only prospectively. (*Id.* 5:17–6:24). Therefore, Defendants contend that *Western Cab* supplies the relevant legal standard, and the Court's prior Order remains on solid ground. (*Id.*).

As a threshold matter, the Court notes that whether *MDC II* is limited to prospective application is a question of first impression. Because there is no controlling law on point, "this Court must predict how the Nevada Supreme Court would decide the question." *Brown v. Kinross Gold U.S.A., Inc.*, 531 F. Supp. 2d 1234, 1245 (D. Nev. 2008); *see also Gravquick A/S v. Trimble Navigation Int'l Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003).

The Court predicts that the Nevada Supreme Court would apply *MDC II* retroactively. The Court is persuaded by the Nevada Supreme Court's handling of retroactivity in a pair of cases construing the Nevada Minimum Wage Amendment ("MWA"). *See Nevada Yellow Cab Corp. v. Eighth Jud. Dist. Court*, 383 P.3d 246 (Nev. 2016) ("*Yellow Cab*"); *Thomas v. Nevada Yellow Cab Corp.*, 327 P.3d 518 (Nev. 2014) ("*Thomas*").

In *Thomas*, the Supreme Court held that the MWA superseded a Nevada statute exempting taxicab drivers from state minimum wage laws. *Thomas*, 327 P.3d at 520–22. The legislature's exemption of taxicab drivers, according to *Thomas*, was impliedly repealed upon the subsequent enactment of the MWA, which defines employees broadly and carves out specific exemptions not including taxicab drivers. *See id.* at 521–22 (citing Nev. Const. art. 15 § 16).

Two years later, in *Yellow Cab*, the Nevada Supreme Court considered whether the "holding in *Thomas* is effective from the date the opinion was published in 2014, only, or whether it should apply retroactively from the date the Amendment was enacted in 2006." *Yellow Cab*, 383 P.3d at 247. In that case, like the present one, the employer taxicab companies argued that "inequitable results will occur if taxicab drivers are provided back wages for work performed prior to the 2014 opinion." *Id.* at 249. The Nevada Court rejected this argument, explaining that equitable balancing would be inappropriate when construing state constitutional minimum wage law. *Id.* at 249–50. Quoting a concurrence by Justice Scalia, the Court reasoned that "[t]o hold a governmental Act to be unconstitutional is not to announce that we forbid it, but that the *Constitution* forbids it." *Id.* at 250 (quoting *Am. Trucking Ass'ns., Inc. v. Smith*, 496 U.S. 167, 201 (1990) (Scalia, J., concurring)). To conclude otherwise, the Nevada Supreme Court continued, would be to "presuppose[ ] a view of our decisions as *creating the law*, as opposed to *declaring* what the law already is." *Id.* (quoting *Am. Trucking*, 496 U.S. at 201).

Accordingly, the Nevada Supreme Court articulated the principle that when it "interpret[s] a constitutional amendment and conclude[s] that it impliedly repeals a statute, that decision applies retroactively to when the amendment was enacted regardless of the balance of equities." *Id.* at 251. Therefore, the decision in *Thomas* "did not create the law in 2014," but rather "declared what the law was upon enactment of the Amendment in 2006." *Id.*

Applying *Yellow Cab*'s reasoning here, the Nevada Supreme Court would likely give retroactive effect to *MDC II*. Because the *Yellow Cab* Court expressly held, in the MWA context, that a new interpretation of a constitutional amendment applies back to the date of enactment "regardless of the balance of equities," *id.* at 251, this Court predicts that the Nevada Supreme Court would come to same conclusion with respect to *MDC II*.

Defendants argue that the Nevada Supreme Court would likely limit *MDC II* to prospective application because the instant case closely approximates the "paradigm case" discussed in *Yellow Cab* as well as *K&P Homes v. Christiana Tr.*, 398 P.3d 292, 293 (Nev. 2017). (MSJ 7:2–20, ECF No. 181). In these cases, the Court cautioned that equitable balancing may apply in the so-called "paradigm case" "when a court expressly overrules a precedent upon which the contest would otherwise be decided differently and by which the parties may previously have regulated their conduct." *Yellow Cab*, 383 P.3d at 251 n.5; *K&P Homes*, 398 P.3d at 295. According to Defendants, because Defendants regulated their conduct in conformity with *Western Cab*, and given *MDC II*'s implicit rejection of *Western Cab*, this case meets the paradigmatic hypothetical case alluded to in *Yellow Cab* and *K&P Homes*.

Preliminarily, the Court is unpersuaded by Defendants' central premise that *MDC II* overturned *Western Cab*. By its express language, *MDC II* distinguished rather than overturned *Western Cab*. In *Western Cab*, the Nevada Supreme Court considered, among other things, whether Nevada's MWA is preempted by federal law or void for vagueness. *W. Cab*, 390 P.3d at 666. To address these questions, the *Western Cab* Court looked to the text of NAC 608.102 to ascertain the type of benefit that would qualify as a health-insurance benefit under the MWA. *Id.* at 670–71. In *MDC II*, the Supreme Court addressed "whether there is some minimum quality or substance of health insurance that an employer must provide for the employer to pay the lower-tier minimum wage under the MWA." *MDC II*, 419 P.3d at 154. On this inquiry, the Court stated that "[t]his question was not argued in *Western Cab*," and that the

NAC—upon which the *Western Cab* holding was based—is "an unworkable standard for making such a determination." *Id.* Nevertheless, the Court reiterated that the NAC, as well as other sources of law, "are primarily reference points and useful illustrations of the types of benefits and coverages that insurance must cover to qualify as *health* insurance." *Id.* (emphasis in original). Thus, *MDC II* distinguished the constitutional inquiry before it from the preemption and void-for-vagueness issue presented in *Western Cab*. Because the *MDC II* Court did so without explicitly or implicitly overturning *Western Cab*, this Court finds no basis to hold otherwise.

Even insofar as *MDC II* diverged from *Western Cab*, the Court nevertheless concludes that the Nevada Supreme Court would treat *MDC II* retroactively. As noted above, the Nevada Supreme Court in *Thomas* undisputedly *did* overturn existing precedent. Nevertheless, the *Yellow Cab* Court held that *Thomas* applies retroactively. *Yellow Cab*, like the instant case, concerned interpretation of the MWA and involved the defendant's argument that inequity would result were *Thomas* to be given retroactive treatment. Given the similarities in the cases—including the same equitable arguments Defendants raise here—the Court cannot discern why this case would not be treated in the same manner by the Nevada Supreme Court.

In sum, the Court predicts that the Nevada Supreme Court would follow its reasoning in *Thomas* and hold that *MDC II* clarified what the Nevada Constitution requires and did not create new law. On this basis, the Court denies Defendants' Motion for Summary Judgment.

## III. <u>Motion to Certify Class</u>

### A. Legal Standard

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). "[C]ertification is proper only if the 'trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule

23(a) have been satisfied.'" *Id.* at 350–51 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). The four Rule 23(a) requirements are numerosity, commonality, typicality, and adequacy of representation. *Id.* at 349; Fed. R. Civ. P. 23(a).

Upon satisfying "Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). "To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites." *Id.* at 615. First, "common questions must 'predominate over any questions affecting only individual members.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (quoting Fed. R. Civ. P. 23(b)(3)). Second, "class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'" *Id.* (quoting Fed. R. Civ. P. 23(b)(3)).

The moving party must affirmatively demonstrate that he or she meets the above requirements. *Parsons v. Ryan*, 754 F.3d 657, 674 (9th Cir. 2014) (citing *Dukes*, 564 U.S. at 350). However, when presented with a motion to certify, a court should not "'turn class certification into a mini-trial' on the merits." *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1178 (9th Cir. 2015) (quoting *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011)).

**B. Discussion**

Plaintiffs move to certify a proposed class encompassing "[a]ll current and former employees of Defendants at their Nevada locations who were paid less than $8.25 per hour but were not provided with qualifying health benefits pursuant to Nev. Const. art. XV, sec. 16, at any time since May 9, 2012." (Mot. to Certify 4:15–17, ECF No. 108). Defendants oppose certification on the following grounds: Plaintiffs cannot meet the commonality and typicality elements of Rule 23(a); Plaintiffs are inadequate representative parties for purposes of Rule 23(a)(4); and Plaintiffs cannot meet the predominance and superpriority requirements of Rule

23(b). (Resp. to Mot. to Certify 7:7–23:2, ECF No. 117).  The below discussion first addresses Defendants' arguments based on Rule 23(a)'s requirements, then moves to those regarding Rule 23(b).

### 1. Rule 23(a)

#### a) *Numerosity*

Rule 23(a)(1) requires that a class be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1).  Generally, courts have held that numerosity is satisfied when the class size exceeds forty members. *See, e.g.*, *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654–56 (C.D. Cal. 2000); *In re Cooper Cos. Inc. Secs. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009).  Further, a plaintiff "need not state exact figures; instead, they can satisfy the numerosity requirement by providing reasonable estimates." *Sobel v. Hertz Corp.*, 291 F.R.D. 525, 541 (D. Nev. 2013).

Here, based upon Defendants' answers to Plaintiffs' interrogatories, Plaintiffs state that the number of employees allegedly paid at an unlawful rate is "at the very least" approximately 3,153 employees between May 9, 2012, and March 10, 2016. (Mot. to Certify 9:8–14, ECF No. 108); (*See* Def.'s Resp. to Interrog. No. 5, Ex. 3 to Mot. to Certify, ECF No. 108-3).  The Court can safely conclude that the potential class is sufficiently numerous such that joinder of each member would be impracticable.

#### b) *Commonality*

"A class has sufficient commonality 'if there are questions of fact and law which are common to the class.'" *Hanlon*, 150 F.3d at 1019 (internal citation omitted).  As clarified in *Dukes*, a plaintiff must demonstrate that the class members "have suffered the same injury" and that their claims "depend upon a common contention . . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." 564 U.S. at 350.

The Court finds that the commonality element is satisfied because this case involves both common legal and factual questions affecting all class members. First, the class members share the common facts of being paid below the upper-tier minimum hourly wage of $8.25 and subject to a common insurance benefits policy. (*See* Mot. to Certify 10:20–27). Defendants' pleadings and answers to interrogatories reveal that these facts pervade the class, not just certain individuals, because Defendants admit to paying employees the lower-tier wage of less than $8.25 based on the same health benefits plan offered throughout the coverage years. (Answer ¶¶ 13–20, 27–66, ECF No. 42); (Def.'s Resp. to Interrog. No. 5, Ex. 3 to Mot. to Certify, ECF No. 108-3); (Def.'s Resp. to Am. Interrog. Nos. 21–24, Ex. 4 to Mot. to Certify, ECF No. 108-4); (Dep. Kelly Pratt 45:10–13, Ex. 5 to Mot. to Certify, ECF No. 108-5). Because of the evidence that Defendants had a uniform policy, and that Plaintiffs' proposed class is tailored to including only those employees who were allegedly damaged by this uniform policy, commonality sufficiently exists. *See Cruz v. MM 879, Inc.*, 329 F.R.D. 639, 645 (E.D. Cal. 2019) ("Plaintiffs have demonstrated the existence of a common compensation scheme and meal break policy that allegedly harmed the entire class of MM 879 employees, and that showing is sufficient."); *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 604 (E.D. Cal. Oct. 8, 2015) ("In the wage and hour context, the inquiry is whether the entire class was injured by the same allegedly unlawful wage and hour practice.").

Defendants' main argument to defeat commonality is that whether they offered a qualifying health benefits plan to each class member depends on an individualized inquiry that looks to how much it cost Defendants to offer the benefits in comparison with each employees' schedules and rates of pay. (Resp. to Mot. to Certify 9:7–18, ECF No. 117). However, this individualized inquiry argument confuses Rule 23(a)'s commonality requirement with Rule 23(b)'s "predominance" requirement. As clarified by the United States Supreme Court, "even a single common question will do" for the purposes of Rule 23(a)(2). *Dukes*, 564 U.S. at 359; see

also *Negrete v. Allianz Life Ins. Co. of N. Am.*, 287 F.R.D. 590, 601–602 (C.D. Cal. 2012) ("Even after *Dukes*, the commonality inquiry does not require plaintiffs to demonstrate the "predominance" of common issues over individualized ones, nor the "cohesion" of the class."). Defendants' individualized inquiry argument is thus better addressed below in the context of the predominance prong of Rule 23(b).

### c) *Typicality*

To demonstrate typicality, a plaintiff must show that her claims are typical of that of the class. Fed. R. Civ. P. 23(a)(3). "[T]he typicality inquiry involves comparing the injury asserted in the claims raised by the named plaintiffs with those of the rest of the class." *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001). In other words, "[t]he test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted). The named plaintiff's injuries need not be "identically positioned" with those of the class to satisfy the typicality requirement. *Parsons v. Ryan*, 754 F.3d 657, 686 (9th Cir. 2014). Rather, the typicality requirement looks to ensure that "the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct." *Id.* at 685 (quoting *Armstrong*, 275 F.3d at 869).

Here, Plaintiffs allege an injury that emanates from Defendants' uniform policy impacting all class members. Defendants' responses to Plaintiffs' interrogatories reveal this uniformity, stating that Defendants employed "a total of 3,153 employees that were paid less than $8.25 per hour" and that the reason for this pay amount was "that Defendant offered such employees qualifying health insurance benefits." (Resp. to Interrog. No. 5, Ex. 3 to Mot. to Certify, ECF No. 108-3); (Resp. to Interrog. No. 21, Ex. 4 to Mot. to Certify, ECF No. 108-4). This evidence not only shows how Plaintiffs' injuries are typical of that with the class

members, but also how Defendants appear to advance a defense that is equally typical to Plaintiffs and the class. Further, in conjunction with the commonality analysis above, the fact that each class member would be subject to individualized damage awards does not defeat typicality. *See Hanon*, 976 F.2d at 508 ("Typicality refers to the nature of the claim . . . of the class representative, and not to the specific facts from which it arose or the relief sought."); *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1140–41 (9th Cir. 2016) ("In wage-and-hour disputes, such individualized damages inquiries are common, and typically do not defeat certification.").

### d) *Adequacy of Representation*

"To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them." *Hanlon*, 150 F.3d at 1020 (citing *Hansberry v. Lee*, 311 U.S. 32, 42–43 (1940)). In *Hanlon*, the Ninth Circuit identified two issues for determining the adequacy of representation: (1) whether the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) whether the named plaintiffs and their counsel will "prosecute the action vigorously on behalf of the class." *Id.*

The Court need only find one class representative to be adequate, *Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands*, Inc., 244 F.3d 1152, 1162 n.2 (9th Cir. 2001), and the Court finds it to be met through Latonya Tyus.[1] First, nothing in the record suggests a conflict of interest between Tyus—or any named Plaintiff—and counsel. Second, Defendants present no evidence that Tyus lacks a willingness to prosecute this case. Tyus has a basic understanding about the claim here, as shown in her testimony on the wage tiers under the

---

[1] In finding the adequacy of representation element satisfied through Latonya Tyus, the Court expresses no doubt or negative opinion as to whether the other named Plaintiffs could adequately serve as representatives for the class. The Court merely proceeds with an analysis of Tyus because she is the first named Plaintiff to be addressed in Defendants' Response when discussing this element. (*See* Defs.' Resp. 18:15–26, ECF No. 117).

MWA and the requirement that employers pay $8.25 unless there is qualifying health insurance. (Dep. Latonya Tyus 19:14–25, 104:20–105:2, Ex. 3 to Defs.' Resp., ECF No. 117-3). Though Defendants point to several misstatements by Tyus about when her claim arose, (Defs.' Resp. 18:16–26), those misstatements do not reveal her to be "startlingly unfamiliar" with this case or blindly relying on counsel. *See In re Twitter Inc. Secs. Litig.*, 326 F.R.D. 619, 628 (N.D. Cal. 2018) ("[T]he threshold of knowledge required to qualify a class representative is low; a party must be familiar with the basic elements of her claim [ ] and will be deemed inadequate only if she is 'startlingly unfamiliar' with the case."); *Stuart v. Radioshack Corp.*, No. C-07-4499 EMC, 2009 WL 281941, at *10 (N.D. Cal. Feb. 5, 2009). Moreover, the Ninth Circuit applies a low bar for qualifying as an adequate class representative, and Tyus meets that standard. *See Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund*, 244 F.3d at 1162 ("The record indicates clearly that he understands his duties and is currently willing and able to perform them. The Rule does not require more.").

The Court further finds that class counsel, having thirty-five years of legal experience and overseeing class action and complex high damages litigation for his firm, will competently and vigorously prosecute the instant case with the assistance of Tyus and other named Plaintiffs. (*See* Springmeyer Biography, Ex. 8 to Mot. to Certify, ECF No. 108-8). Therefore, the adequacy of representation requirement is satisfied.

### 2. Rule 23(b)

Rule 23(b)(3) permits certification where "the court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy" in light of, among other things, "the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3).

### a) *Predominance*

Defendants first argue that Plaintiffs cannot satisfy the predominance requirement of Rule 23(b)(3) because the proposed class definition is improperly "fail-safe." (Defs.' Resp. 13:1–13:22, ECF No. 117). A fail-safe class is "one that is defined so narrowly as to 'preclude[ ] membership unless the liability of the defendant is established.'" *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1138 n.7 (9th Cir. 2016) (quoting *Kamar v. RadioShack Corp.*, 375 Fed. App'x. 734, 736 (9th Cir. 2010)). To make this fail-safe argument, Defendants point to the proposed class definition's language of including persons "who were offered health benefits that did not qualify Defendants to pay less than [$8.25 per hour] pursuant to Nev. Const. art XV, § 16." Defendants' contention is that this definition mirrors the precise legal issue that defines this case: whether employees received sufficient health benefits to warrant wages less than $8.25. According to Defendants, for Plaintiffs' class definition to essentially use the same language as the legal issue here, it will improperly prevent the Court from finding someone to be a class member until *after* the Court resolves the merits of this class-wide dispute. (*Id.*).

The Ninth Circuit has cautioned, however, that "our circuit's caselaw appears to disapprove of the premise that a class can be fail-safe," though the circuit has not ruled directly on the appropriateness of fail-safe classes. *See Melgar v. CSK Auto, Inc.*, 681 F. App'x 605, 607 (9th Cir. 2017) (citing William B. Rubenstein, Newberg on Class Actions § 3:6 (5th ed. 2016), which states, "many courts have held that class definitions referencing the merits of the case are not necessarily problematic."). The rationale for this caution, as suggested by the circuit's decisions, is that "[i]t is implicit in the definition of [a] class that its members are persons who *claim* to have been (or to be)" wronged. *Vizcaino v. U.S. Dist. Court for W. Dist. of Washington*, 173 F.3d 713, 722 (9th Cir. 1999). Because a class is similarly linked by allegations of wrongful conduct, denying certification based on the definition's mere reference

to the ultimate issue linking them would "preclude certification of just about any class of persons alleging injury from a particular action." *Vizcaino*, 173 F.3d at 722 (quoting *Forbush v. J.C. Penney Coe.*, 994 F.2d 1101 (5th Cir. 1993), *abrogated on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011); *see also In re Rodriguez*, 695 F.3d 360, 370 (5th Cir. 2012). From the ninth circuit's caselaw, district courts in this circuit have thus permitted apparent fail-safe definitions that reference the legal issue at the heart of cases, though most approved definitions are in the context of discrimination claims. *See, e.g.*, *Nevarez v. Forty Niners Football Co., LLC*, 326 F.R.D. 562, 572 (N.D. Cal. 2018) (certifying a class, as well as others, defined as persons "who have been denied equal access to Levi's Stadium's facilities, services, accessible seating, parking, amenities, and privileges . . . ."). The circuit's disapproval of the fail-safe concept, consequently, makes Defendants' argument "tenuous at best." *Id.*

The Court, moreover, is not persuaded that Plaintiffs' proposed definition is impermissibly fail-safe and should preclude certification. As discussed in this Order's section denying summary judgment, this case draws on unique circumstances because the Nevada Supreme Court has largely outlined—through objective requirements—the precise facts needed to prove a violation of the MWA. Consequently, while Plaintiffs' definition references the legal issue here, it does not place the Court in an untenable, fail-safe position where it could determine membership only after proceeding through a series of individualized, subjective determinations that ultimately resolve the merits of each person's claim. *See* 1 McLaughlin on Class Actions § 4:2 (15th ed. 2018) (explaining that courts "properly look below the surface of the class definition" to determine if there are issues of ascertainability which should preclude certification); *cf. Melgar*, 681 F. App'x 605, 607 ("[T]he class definition did not presuppose its success, because the liability standard applied by the district court required class members to prove more facts to establish liability than are referenced in the class definition.").

Because Plaintiffs' class definition is not impermissibly fail-safe, the next issue is Rule 23(b)(3)'s mandate that a case's common questions predominate over individualized issues. The predominance analysis focuses on "the legal or factual questions that qualify each class member's case as a genuine controversy" to determine "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997); *see also* Fed. R. Civ. P. 23(b)(3); *Nevarez v. Forty Niners Football Co., LLC*, 326 F.R.D. 562, 584 (N.D. Cal. 2018). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal quotations omitted). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Cruz v. MM 879, Inc.*, 329 F.R.D. 639, 648 (E.D. Cal. 2019) (quoting *Hanlon*, 150 F.3d at 1022).

Here, Plaintiffs provide evidence to show that Defendants uniformly paid the proposed class employees below $8.25 and offered a common health benefits plan each year. That evidence consequently reveals a uniform corporate practice that carries "great weight for certification purposes." *Senne v. Kansas City Royals Baseball Corp.*, No. 17-16245, 2019 WL 3849564, at *19 (9th Cir. Aug. 16, 2019). Defendants argue that there will need to be a need an individualized inquiry to determine each class member's owed wages and whether they received qualifying health benefits under the MWA; but there are two reasons why that argument does not counter the predominance of common facts and related issues shared by the class. First, the Ninth Circuit has repeatedly stated that "the rule is clear: the need for individual damages calculations does not, alone, defeat class certification." *Vaquero v. Ashley*

*Furniture Indus., Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016). Thus, while the final amount of wages owed to a class member here could differ depending on an employee's hours worked and base wage, that is not fatal to class certification. *See Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001). Second, to the extent Defendants paid part of an employee's health benefits premium, deposition testimony shows how Defendants' payment toward premiums would appear in less than "a tenth of one percent" of potential class members, (Mot. to Certify 12:8–12); (*see* Dep. Nancy Holliday 23:4–27:22, Ex. 31 to Defs.' Renewed MSJ, ECF No. 77-32), and Defendants do not provide support to dispute that calculation. Similarly, when asked if paying for assistance with premiums of some employees was "the only cost associated with offering the SRC plans," the Director of Human Resources for Defendant Cedar answered "yes." (Dep. Deborah Harmon 115:24–116:7, ECF No. 108-6).

Accordingly, the common factual circumstances, common wage policy, and common benefits plans at issue here guide the Court to find that common issues predominate over the individualized inquiries in this matter. *See Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 606 (E.D. Cal. 2015) (finding predominance to be satisfied pursuant to Rule 23(b)(3) after explaining that, "although the scope of the underpayment will vary from plaintiff to plaintiff, the determination of whether the policies at issue actually violate [the applicable law] will answer a bulk of the inquiry before the Court.").

### b) *Superiority*

Rule 23(b)(3) requires that a class action format be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). To determine superiority, Rule 23(b)(3) provides a non-exhaustive list of factors for courts to consider:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of

the claims in the particular forum; [and] (D) the difficulties likely to be encountered in the management of a class action.

Plaintiffs first argue that a class is the superior method to litigate this case because of the "relatively small amount of damages at stake for each individual." (Mot. to Certify 17:10–16, ECF No. 108). Indeed, since the claim here seeks recovery for minimum wage violations, the potential recovery for each claimant would be greatly disproportionate to litigation costs if each employee were to bring their claim individually. Courts routinely find such circumstances to favor the class mechanism. *See, e.g.*, *Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001). Additionally, because much of the evidence in this case, according to Plaintiffs, will rely on the same payroll records, computer systems, insurance benefits, and testimony, the class mechanism preserves resources of the Court and parties by avoiding thousands of individual lawsuits that would involve duplicative discovery. The Court thus finds that the superiority element satisfied here. (Mot. to Certify 17:27–18:3).

Altogether, after scrutinizing the applicable requirements of Rule 23(a) and Rule 23(b), the Court finds that class certification is warranted.

## IV.     CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Class Certification, (ECF No. 108), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment, (ECF No. 110), is **DENIED**.

**DATED** this __26__ day of September, 2019.

_____
Gloria M. Navarro, District Judge
United States District Court